Martin, J.
delivered the opinion of the court. M'Neil, Fisk & co. of New-Orleans, who sue in behalf of W. King, of the state of Mississippi, state that Fisk & M’Neil, of Natchez, shipped on board of a boat, of which Samuel Crawford was master, and a common carrier, thirteen bales of cotton, for the account of said King, consigned to M‘Neil, Fisk & co. that the defendant has unlawfully possessed himself of the cotton.
The defendant answers that the cotton was by him fairly purchased in market overt, and he is *387 a bona fide purchaser, for a valuable consideration ; that no consideration was paid by King to Crawford, and the transaction between them is a fraudulent one.
The district court gave judgment for the defendant, being, of opinion that “ there was no evidence which shews the defendant had any knowledge that the cotton was consigned to the plaintiffs ; that a large portion of the growers of the upper country produce are their own carriers, and whoever arrives at this port with produce is presumed to be owner of it. A bona fide purchaser, under such a title, ought to be maintained in the property ; that there was no sufficient evidence to establish collusion or fraud between the defendant and Crawford, the seller, and that the purchaser was not in good faith.”
The plaintiffs appealed, and the district judge has certified that the whole evidence appears on the record.
Stebbins Fisk deposed that he knew the bill of lading ; that it was to be given for the cotton sued for, which he knows to belong to King. Crawford, oh his arrival, called at the plaintiffs’ counting house, and offered to deliver the cotton as soon as he should find a birth. A year ago, last winter, he, Crawford, brought some tobacco, consigned to the plaintiffs.
*388 On his cross examination, this witness said, he never saw Crawford write, and does not that the bill of lading is signed by him. He knows the cotton belongs to King, by the letters from Fisk & M’Neil to M’Neil, Fisk & co.: these houses being connected in co-partnership, and he knows it no otherway. Crawford called several times on the plaintiffs ; saying he could not land the cotton, because he was not able to come to the levee ; that, when he landed the cotton, he would inform them. The two houses are composed of the same members, except the latter, of which Mr. Lesassier is a member.
Manning deposed that the cotton was brought to the house occupied by one Rust, on the batture, at the corner of the canal, at 9 A. M. accompanied by ten men, who had been arrested by the marshal, and a few days before discharged from prison. He knew the cotton to have been ginned at Cochran’s gin, and communicated his suspicion that every thing was not right to Rust and Rogers, and would not have bought the cotton. It was put in a room in the lower part Of the house, next to which was another used as a grog shop, and another in which were gamling tables. The upper part of the house is occupied by a bar, two billiard and gambling *389 tables. The house stands alone, directly on the river. When the cotton was brought the weather and roads were good, and it came from a considerable distance above.
Rust deposed he was called upon by the defendant and another person, who said he was the owner of the cotton, the night before it was brought, and asked leave to store it, which he granted. With the cotton, came, besides the negroes driving the drays, ten men : he received the cotton as the defendants, and held it subject to his order. He has frequently seen the defendant and Crawford, in company, at his house. The latter was generally considered, by the persons about the house, as engaged in the Mexican expedition, as well as several of the men who came with the cotton. The lower part of his house is occupied as a grog shop and gambling house, and is a place of common resort for boatmen. No cotton was ever before or since brought there.
Rogers was at Rust’s, when the cotton came ; he corroborates what he has deposed. His suspicions were excited by the appearance of things. He took down the marks and numbers of the bales : they correspond with the bill of lading annexed to the petition.
It appears to us that the district court erred. *390 The plaintiffs ought to recover, if their allegations be uncontradicted or proven, unless some further fact be alleged and proven.
None of the allegations are contradicted ; but it is alleged that no consideration was paid by King to Crawford, and that the transaction between them is a fraudulent one. Crawford is not alleged, or pretended, to be King’s vendor of the cotton, he is only known in this suit as the master of the boat, and nothing was to be paid to him but the freight, and that, not till after the delivery of the cotton to the consignees. There is not any proof of fraud. So that the plaintiffs’ right to the cotton, as stated in the petition, is made out.
If the bona fide purchase of the cotton, alleged in the answer, was proves, it would be proper to enquire whether a sale by a common carrier transfers the property. But there is not any evidence of a sale, nor of any payment.
The defendant’s counsel contends that the cotton must be presumed to be his client’s, because it is proven that Rust received it as his, from a person who is, not named, or whom he does not appear to know.
The cotton claimed, in the petition, is therein described by the marks and numbers of the *391 bales, in the margin of the bill of lading ; and Rogers proves that the cotton brought to Rusts, had the same marks and numbers. The defendant has not denied any of the facts in the petition, but has relied on special pleas, which the evidence does not support.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that there be judgment for the plaintiffs, with costs in both courts.